UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **EVA MAE GIVENS,** by her attorneys-in-fact **DEBORAH R. BOWSER** and **EUGENE P. GIVENS, JR.**, on behalf of herself and of all others similarly situated,<br><br>Plaintiffs,<br><br>-v.-<br><br>**MURIEL BOWSER,** in her official capacity as Mayor, Washington, D.C., **LAURA GREEN ZEILINGER,** in her official capacity as Commissioner, District of Columbia Department of Human Services, **WAYNE TURNAGE, MPA,** in his official as Director, District of Columbia Department of Health Care Finance, and **EUGENE A. ADAMS**, in his official capacity as Chief Judge of the District of Columbia Office of Administrative Hearings,<br><br>Defendants. | Civil Action No.<br><br>20 CV ____<br><br>**(Class Action)**<br><br>**COMPLAINT** |

INTRODUCTION

1. Eva Mae Givens ("Ms. Givens") is an 85-year old nursing home resident whose nursing home bills and other medical expenses are paid for by Medicaid.

2. Although the District of Columbia ("the District") found Ms. Givens eligible for Medicaid in May of 2019, retroactive to February 1, 2019, the District improperly calculated the amount of Ms. Givens income that was available to pay for her care by failing to deduct medical expenses Ms. Givens incurred prior to becoming eligible for Medicaid, as required by Federal law.

{741767:}

3. On June 6, 2019, Ms. Givens filed a request for a fair hearing with Defendants concerning the improper income calculation, but Defendants have not scheduled, heard or decided the fair hearing, as required by Federal law.

4. Ms. Givens believes that Defendants have a policy and/or practice of (i) failing to properly deduct from Medicaid applicants'/recipients' incomes medical and remedial expenses incurred by the Medicaid applicants/recipients before they became eligible for the Medicaid program; and (ii) failing to render Medicaid fair hearing decisions within 90 days of the requests for such hearings.

5. Accordingly, Ms. Givens brought this action on behalf of herself and all others similarly situated.

## JURISDICTION

6. This Court has jurisdiction of this action under 28 U.S.C. § 1331.

## VENUE

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

8. Ms. Givens is a District of Columbia resident who resides in a nursing home in the District of Columbia

9. Defendant Muriel Bowser ("Mayor Bowser") is the Mayor of the District of Columbia, and along with the District of Columbia Department of Human Services ("DHS") and the District of Columbia Department of Health Care Finance ("DHCF"), have ultimate responsibility for administering the Medicaid program.

10. Defendant Laura Green Zeilinger ("Commissioner Zeilinger") is the Commissioner of DHS is responsible for the administration of the Medicaid program in the District of Columbia.

11. Defendant Wayne Turnage ("Director Turnage") is the Director of DHCF and is also responsible for the administration of the Medicaid program in the District of Columbia.

12. Defendant Eugene A. Adams ("Chief Judge Adams") is the Chief Judge of the District of Columbia Office of Administrative Hearings ("OAH") and is responsible for all fair hearings concerning Medicaid in the District of Columbia, including but not limited to the scheduling of fair hearings, holding fair hearings and rendering decisions on fair hearing.

STAUTORY BACKGROUND

13. Medicaid is a joint Federal-State program by which the Federal government subsidizes State programs providing medical benefits for residents of participating States, which for this purpose includes the District of Columbia ("the District"). Each participating State must determine how financial eligibility for the program will be administered by that State, within the contours of Federal law.

14. Those eligibility requirements must be incorporated in a separate document called the State Plan. The State Plan for each State is then submitted to a federal agency, the Centers for Medicare and Medicaid Services ("CMS"), for review for compliance with Federal law. Once a State establishes a Medicaid program, a condition of continuing Federal subsidy is that the State operate its Medicaid program in compliance with Federal law and regulations and its State Plan.

15. The District has chosen to operate a Medicaid program. As required by federal law, the District has prepared a State Plan submitted for approval by CMS. Under D.C. Code § 1-307.02 (previously D.C. Code § 1-359), the Mayor is also required to submit the District's State Plan "and any modifications of the plan" to the Council of the District of Columbia for approval. If the D.C. Council fails to act within 30 days, then the State Plan or the proposed amendment is deemed approved. Accordingly, every provision of the District's State Plan is an

affirmative provision of D.C. law, such that the District's Medicaid beneficiaries may rely upon those laws and seek their judicial enforcement.

16. Under its State Plan, the District has elected to provide benefits to aged, blind and disabled individuals who are "medically needy," that is, who meet all of the requirements for Medicaid benefits except for income, but whose income is not sufficient to cover their medical costs. The District's Medicaid program provides long-term care (*i.e.,* nursing home) benefits when an individual's income is insufficient to pay for the cost of his or her own care and when all of the other eligibility requirements are met. Those other requirements include having no more than $4,000 in non-exempt assets and requiring a nursing home level of care.

17. District residents seeking long-term care benefits apply to DHS and DHCF, whose staffs are supposed to apply the rules set forth in federal law, using the guidance provided in the D.C. Income Maintenance Administration Manual (the "*Eligibility Manual*"), a document issued by the Income Maintenance Administration and revised from time to time. DHS and DHCF first determine whether an applicant meets the Medicaid financial eligibility requirements, and then obtains from a private agency (under contract with the Medicaid program) a determination of whether the individual requires a nursing home level of care. If the individual both (1) requires nursing home care, and (2) is financially eligible, DHS and DHCF then determine how much of the recipient's personal income he or she is required to pay for the cost of care. This is known as the recipient's "cost of care," and is similar in effect and intent to a co-payment. The nursing home is expected to collect that amount from the resident and bills the Medicaid program for the difference between that amount and the amount it agreed to accept for providing services to Medicaid beneficiaries.

18. To determine how much of a person's income must be paid toward the cost of care, the District's Medicaid program is required by federal law to deduct from the

beneficiary's income the following: premiums for Medicare and other health insurance; a personal needs allowance (set by the District at $70 per month); and incurred medical and remedial expenses "not covered" by the Medicaid program. 42 U.S.C. § 1396a(r)(1)(a)(ii); 42 C.F.R. § 435.725(c)(4).   Federal law has long provided that medical and remedial services received by a Medicaid patient before the patient became financially eligible for the program are "not covered," and therefore must be deducted from current income. State Medicaid programs may limit that liability (and thus the amount of the deduction from recipient income), but only by "reasonable limits" set out in their State Plans.

19. The District's State Plan does not include a provision identifying any "reasonable limits" which the District places on the deduction of medical or remedial expenses "not covered" by Medicaid.  Suppplement 3 to Attachment 2,6-A of the D.C. State Plan (where the District is to report such "reasonable limits," is blank).  Thus, under D.C. law, all uncovered expenses, and therefore all pre-eligibility expenses, must be deducted to calculate each beneficiary's cost of care.

20. 42 U.S.C. § 1396a(a)(3) requires that a State that participates in the Medicaid program must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."

21.  42 C.F.R. § 431.244(f) requires that that the state must render hearing decisions within 90 days of the request for a fair hearing.

22. As discussed above, OAH and is responsible for all fair hearings concerning Medicaid in the District of Columbia, including but not limited to the scheduling of fair hearings, holding fair hearings and rendering decisions on fair hearings.

FACTS

23. On February 26, 2019, Ms. Givens applied to Mayor Bowser, Commissioner Zeilinger and Director Turnage (collectively the "Application Defendants"), through the D.C. Medicaid Long Term Care Unit, for Medicaid to cover Ms. Givens' medical expenses, including her nursing home care.

24. Along with documents Ms. Givens submitted to the D.C. Medicaid Long Term Care Unit on February 26, 2019 and April 22, 2019 in support of her Medicaid application, were copies of unpaid Medical bills from the Stoddard Baptist Global Care skilled nursing facility ("Stoddard Baptist") and other medical providers totaling $31,280 for November 1, 2018, through January 31, 2019, which qualify for a Pre-Eligibility Medical Expense (PEME) deduction under Federal law.

25. By a notice dated May 17, 2019, the Application Defendants found Ms. Givens eligible for Medicaid but failed to approve Ms. Givens' request for a PEME deduction. As a result, effective February 1, 2019, Ms. Givens, has been required to pay $2,044 of her income per month to Stoddard Baptist Global Care SNF for her cost of care that she should not have had to pay, and has been unable to use that money to pay off her $31,280 unpaid medical bills to Stoddard Baptist and other medical providers. Ms. Givens' continued liability to Stoddard places her at risk of discharge for non-payment.

26. If the Defendants had properly deducted from Ms. Givens monthly income the $31,280 of unpaid medical bills, Ms. Givens' would not have been required to pay any of her income toward her current cost of care at Stoddard Baptist, and D.C. Medicaid would have had to pay the entire amount to which Stoddard Baptist was entitled. At the same time, Ms. Givens would have used her current income of $2,044 each month to pay down her $31,280 in medical bills to Stoddard Baptist and her other medical providers.

6

27. On June 6, 2019, Ms. Givens filed a request for a fair hearing with D.C. Office of Administrative Hearings, concerning the failure of the Application Defendants to approve Ms. Givens request for PEME deduction.

28. As of the date of the instant Complaint, which is more than 90 days from the date Ms. Givens requested the fair hearing, OAH has failed to schedule Ms. Givens fair hearing, let alone conduct it or render a decision on her request.

29. Upon information and belief, the Application Defendants, when calculating how much of Medicaid applicants'/recipients' incomes the applicants/recipients must pay towards their health care after they become eligible for the Medicaid program, have a policy and/or practice of failing to deduct from Medicaid applicants'/recipients' income the medical and remedial expenses the applicants/recipients incurred prior to becoming financially eligible for the Medicaid program, and, over the last three years, Defendants have done so to over 40 persons.

30. Upon information and belief, Mayor Bowser and Chief Judge Adams (collectively, the "Fair Hearing Defendants") have a policy and/or practice of failing to render Medicaid fair hearing decisions within 90 days of the requests for such hearings, and, over the last 3 years, Defendants have done so to more than 40 persons.

## CLASS ALLEGATIONS

31. Ms. Givens brings this class action on behalf of herself and all others similarly situated under rules 23(a) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure.

32. Ms. Givens seeks to represent the following classes of persons (hereinafter "the Classes") defined as follows:

Class A - All current and future District of Columbia Medicaid applicants/recipients, as well as all District of Columbia Medicaid applicants/recipients over the last three years,

who have incurred and/or will incur medical and remedial expenses prior to becoming financially eligible for the Medicaid program, for whom the Application Defendants have failed or will fail to deduct those expenses from the applicants'/recipients' income when calculating how much of the applicants'/recipients' income the applicants/recipients must pay towards their health care after they become eligible for the Medicaid program.

Class B - All current and future District of Columbia Medicaid applicants/recipients who have requested fair hearings and for whom the Fair Hearing Defendants have not rendered or will not render a fair hearing decision within 90 days of the requests for the fair hearings.

33. <u>Numerosity</u>: Upon information and belief, there are more than 40 members of each of the Classes.

34. Upon information and belief, the size of the Classes and the identities of the individual members thereof are ascertainable through Defendants' records.

35. Members of the Classes may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to the Classes and deemed necessary and/or appropriate by the Court.

36. <u>Typicality</u>: The claims of Ms. Givens are typical of the claims of Class A. The Application Defendants have failed or will fail to deduct from the amount of income Ms. Givens and the members of Class A must pay towards their health care — after Ms. Givens and the members of Class A became or become eligible for the Medicaid program — the medical and remedial expenses Ms. Givens and members of Class A incurred or will incur prior to

becoming eligible for the Medicaid program.  Ms. Givens and all members of Class A would benefit by a judgment (1) requiring the Application Defendants to deduct from the amount of their incomes they must pay towards their health care, after they become eligible for the Medicaid program, the medical and remedial expenses they incurred prior to becoming eligible for the Medicaid program; and (2) requiring the Application Defendants to reimburse to the members of Class A the monies the Application Defendants wrongfully required members of Class A to pay for their health care.

37.  The claims of Ms. Givens are typical of the claims of Class B.  The Fair Hearing Defendants have failed or will fail to render decisions on Medicaid fair hearings requested by Ms. Givens and the members of Class B within 90 days of the requests for those fair hearings.  Ms. Givens and all members of Class B would benefit by a judgment requiring the Fair Hearing Defendants to take all actions necessary so that Medicaid fair hearing decisions are rendered within 90 days of the requests for the fair hearings.

38.  <u>Common Questions of Fact and Law</u>:  There are questions of fact and law common to the members of Class A, including, but not limited to: (1) whether the Application Defendants' policy or practice of failing to deduct from the amount of income Medicaid applicants/recipients must pay towards their health care, after they become eligible for the Medicaid program, the medical and remedial expenses the applicants/recipients incurred prior to becoming financially eligible for the Medicaid program, violated, violates or will violate 42 U.S.C. § 1983 in that it violated, violates or will violate 42 U.S.C. § 1396a(r)(1)(a)(ii) and 42 C.F.R. § 435.725(c)(4); (2) the remedies available to Ms. Givens and the members of Class A.

39.  The questions of fact and law common to Ms. Givens and Class A predominate over questions which may affect individual members.

40. There are questions of fact and law common to the Ms. Givens and the members of Class B, including, but not limited to, whether the Application Defendants' policy of failing to render Medicaid fair hearing decision within 90 days of the requests for such hearings violates 42 U.S.C. § 1983 in that it violates and will violate 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.244(f); and (ii) the remedies available to Ms. Givens and the members of Class B.

41. Adequacy of Representation:  Ms. Givens is an adequate representative of the Classes because Ms. Givens' interests do not conflict with the interests of the members of the Classes. Ms. Givens will fairly, adequately and vigorously represent and protect the interests of the members of the Classes and has no interests antagonistic to the members of the Classes. Ms. Givens has retained counsel experienced in federal and state court actions concerning Medicaid benefits and in class actions.

42. Superiority:  A class action is superior to other available means for the fair and efficient adjudication of the claims of Class A. While the aggregate damages which may be awarded to the members of Class A may be substantial, the damages suffered by individual members of Class A are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of Class A to individually seek redress for the wrongs done to him or her. The likelihood of the individual members of Class A prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of Class A's claims as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of Class A. Ms. Givens knows of no difficulty to be encountered in the management of this action that would preclude its

maintenance as a class action.

43. The Application Defendants have acted or refused to act on grounds applicable to Ms. Givens and the members of Class A as a whole, namely by failing to deduct from the amount of income Ms. Givens and the members of Class A must pay towards their health care, after they become or became eligible for the Medicaid program, the medical and remedial expenses the applicants/recipients incurred prior to becoming financially eligible for the Medicaid program. The Application Defendants' failures violate and will violate 42 U.S.C. § 1983 in that they violate and will violate 42 U.S.C. § 1396a(r)(1)(a)(ii) and 42 C.F.R. § 435.725(c)(4). Accordingly, injunctive relief and corresponding declaratory relief are appropriate.

44. The Fair Hearing Defendants have acted or refused to act on grounds applicable to Ms. Givens and the members of Class B as a whole, namely by failing to take actions necessary so that decisions on Medicaid fair hearings are rendered within 90 days of the requests for such hearings. The Fair Hearing Defendants' failures violate and will violate 42 U.S.C. § 1983 in that they violate and will violate 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.244(f). Accordingly, injunctive relief and corresponding declaratory relief are appropriate.

## AS AND FOR A FIRST CAUSE OF ACTION

45. Ms. Givens repeats and realleges all of the allegations set forth in all of the above paragraphs as though fully set forth herein.

46. By virtue of the foregoing, the Application Defendants have violated and will violate the rights of Ms. Givens and the members of Class A in that Defendants have violated and will violate 42 U.S.C. § 1983 in that they have violated and will violate 42 U.S.C. § 1396a(r)(1)(a)(ii) and 42 C.F.R. § 435.725(c)(4).

## AS AND FOR A SECOND CAUSE OF ACTION

47. Ms. Givens repeats and realleges all of the allegations set forth in all of the above paragraphs as though fully set forth herein.

48. By virtue of the foregoing, the Fair Hearing Defendants have violated and will violate the rights of Ms. Givens and the members of Class B in that Defendants have violated and will violate 42 U.S.C. § 1983 in that they have violated and will violate 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.244(f).

WHEREFORE, Ms. Givens and the members of the Classes A and B pray for a judgment:

A. Certifying the Classes, appointing Ms. Givens as the representative of the Classes and appointing Ms. Givens' attorneys as counsel for the Classes;

B. Declaring that the Application Defendants' policy and practice of failing to deduct from the amount of income Medicaid applicants/recipients must pay towards their health care, after they become eligible for the Medicaid program, the medical and remedial expenses the applicants/recipients incurred prior to becoming financially eligible for the Medicaid program, is illegal, null and void;

C. Ordering the Application Defendants to deduct from the amount of income Ms. Givens and the members of Class A must pay towards their health care, after they become eligible for the Medicaid program, the medical and remedial expenses Ms. Givens and the members of Class A incurred prior to becoming financially eligible for the Medicaid program.

D. Awarding Ms. Givens and the members of Class A monetary damages in an amount to be determined at trial;

E. Declaring that the Fair Hearing Defendants' policy and practice of failing to render Medicaid fair hearing decisions within 90 days of the requests for the hearings, is illegal, null and void

  F. Ordering the Fair Hearing Defendants to render Medicaid fair hearing decisions within 90 days of the requests for the hearings by Ms. Givens and the members of Class B;

  G. Ordering the Application Defendants and the Fair Hearing Defendants to pay Ms. Givens' and the members of the Classes the attorneys' fees, expenses and costs of this action pursuant to 42 U.S.C. § 1988; and

  H. Ordering such further and other relief as this Court shall deem just and proper.

Dated: White Plains, New York
   February 5, 2020

               **BELLIN & ASSOCIATES LLC**

               /s/ Aytan Y. Bellin
               By: Aytan Y. Bellin, Esq.
               50 Main Street, Suite 1000
               White Plains, New York 10606
               Tel:  (914) 358-5345-2400
               Fax: (212) 571-0284
               aytan.bellin@bellinlaw.com

               **LANDSMAN LAW GROUP**
               Ron M. Landsman, Esq. (*pro hac vice*
                application to be filed shortly)
               200-A Monroe Street, Suite 110
               Rockville, Maryland 20850
               Tel: (240) 403-4300
               Fax: (240) 402-4301
               rml@landsmanlawgroup.com

               *Attorneys for Ms. Givens and the Proposed Classes*