UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

**EVA MAE GIVENS,** by her attorneys-in-fact **DEBORAH R. BOWSER** and **EUGENE P. GIVENS, JR.**, on behalf of herself and of all others similarly situated,

                      Plaintiffs,

-v.-

**MURIEL BOWSER,** in her official capacity as Mayor, Washington, D.C., **LAURA GREEN ZEILINGER,** in her official capacity as Commissioner, District of Columbia Department of Human Services, **WAYNE TURNAGE, MPA,** in his official as Director, District of Columbia Department of Health Care Finance, and **EUGENE A. ADAMS**, in his official capacity as Chief Judge of the District of Columbia Office of Administrative Hearings,

                      Defendants.

Civil Action No.

**20 cv 307 (EGS)**

---

**EUGENE P. GIVENS, JR., DEBORAH R. BOWSER AND ANTHONY D. GIVENS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTIONS FOR SUBSTITUTION PURSUANT TO FED. R. CIV. P 25(a), FOR PERMISSION TO FILE A SECOND AMENDED COMPLAINT AND FOR A RULING THAT THEIR OBEJCTIONS TO A REPORT AND RECOMMENDAITON ARE TIMELY, OR, IN THE ALTERNATIVE FOR AND EXTENSION OF TIME WITHIN WHICH TO FILE THESE OBJECTIONS, AND MEMORANDUM OF LAW IN OPPOSITION TO DEFEDANTS' MOTION FOR A STAY OF BRIEFING AND CONSIDERATION OF MOVANTS' MOTION TO AMNED**

| | |
|---|---|
| LANDSMAN LAW GROUP | BELLIN & ASSOCIATES LLC |
| By: Ron M. Landsman, Esq. | By: Aytan Y. Bellin, Esq. |
| 200-A Monroe Street, Suite 110 | 50 Main Street, Suite 1000 |
| Rockville, MD 20850 | White Plains, NY  10606 |
| Tel: (240) 403-4300 | Tel: (914) 358-5345 |
| Fax: (240) 403-4301 | Fax: (212) 571-0284 |
| Email: rml@landsmanlawgroup.com | Email: aytan.bellin@bellinlaw.com |

*Attorneys for Movants*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT…....…………………………………………………………..**Error! Bookmark not defined.**

ARGUMENT………………………………………………………………………………………...1

I.  MOVANTS' MOTION FOR SUBSTITUTION SHOULD BE GRANTED……………..1

   A.  Because Defendants' Mootness Arguments are Currently *Sub Judice* Before this Court on Movants' Objections to Magistrate-Judge Faruqui's May 3, 2021 Report and Recommendation, and Because Movants' Require a Ruling on Their Motion for Substitution to Allow this Court to Consider Those Objections and, if Necessary, Movant's Motion to File a Second Amended Complaint, Movants' Motion for Substitution Should Be Granted Before Any Ruling on Mootness…………………………………..2

   B.  Ms. Givens' PEME Claims in this Case are Still Live……………………………3

   C.  Ms. Givens' and Proposed Class B's Claims Regarding the Failure of Defendants to Render Medicaid Fair Hearing Decisions Within 90 Days of the Requests for Such Hearings Can Move Forward Under the Inherently Transitory Exception ot the Mootness Doctrine……………………………..….6

   D.  Movants' Motion for Substitution was Timely Filed……………………………..9

II.  DEFENDANTS' MOTION FOR A STAY OF BRIEFING AND CONSIDERATION OF MOVANTS' MOTION TO AMEND THE FAC SHOULD BE DENIED…………………………………………………………………….…13

CONCLUSION………………………………………………………………………………...……17

**PRELIMINARY STATEMENT**

Eugene P. Givens, Jr., Deborah R. Bowser and Anthony D. Givens (collectively "Movants") submit this reply memorandum of law in further support of their motions (1) to substitute as Plaintiffs for their mother Eva Mae Givens, who passed away on December 24, 2020; (2) for permission to file a Second Amended Complaint; and (3) for a ruling that Movants' objections to Magistrate-Judge Zia M. Faruqui's May 3, 2021 Report of Recommendation were timely filed, or in the alternative, should this Court decide that these objections were not timely because the Movants have not yet been formally substituted as Plaintiffs for Ms. Givens in this case, to grant Movants' an extension of time in which to file their objections to that report and recommendation until the date this Court grants Movants' motion for substitution and deem those objections as timely filed as of that date. Movants also submit this memorandum of law in opposition to Defendants' motion for a stay of briefing and consideration of Movants motion for permission to file a Second Amended Complaint.   For the reasons that follow, the Movants' motions should be granted and Defendants' motion to stay should be denied.

**ARGUMENT**

**I.    MOVANTS' MOTION FOR SUBSTITUTION SHOULD BE GRANTED**

Defendants appear to concede that Movants, as the sole distributees of Ms. Givens, qualify as the "legal representatives" of her estate who could potentially be substituted as plaintiffs in this case pursuant to Fed. R. Civ. P. 25(a). Dkt. No. 34-1 at 4-5. Nevertheless, Defendants argue that Movants' motion for substitution should be denied because allegedly (1) Ms. Given's claims were moot before her death; (2) any of Ms. Givens' claims that remained live while she was alive were mooted by her death; and (3) the motion for substitution was not timely filed.   None of Defendants' arguments has merit.

1

      **A.**      **Because Defendants' Mootness Arguments are Currently *Sub Judice* Before this Court on Movants' Objections to Magistrate-Judge Faruqui's May 3, 2021 Report and Recommendation, and Because Movants' Require a Ruling on Their Motion for Substitution to Allow this Court to Consider Those Objections and, if Necessary, Movant's Motion to File a Second Amended Complaint, Movants' Motion for Substitution Should Be Granted Before Any Ruling on Mootness.**

In arguing that the Movants' motion for substitution should be denied because Ms. Givens' claims are moot, Defendants' are putting the cart before the horse. This Court needs to first render a decision on Movants' motion for substitution, so that it can rule on Movants' objections to Magistrate-Judge Faruqui's May 3, 2021 Report and Recommendation ("the R&R"), and, if necessary, Movants' motion to file a Second Amended Complaint.

The R&R recommended that all of Ms. Givens' claims in the First Amended Complaint ("FAC") be dismissed as moot, Dkt. No. 28 at 6-15, and Movants, concurrently with their filing of a May 16, 2021 motion for substitution, filed objections to the R&R. Dkt. Nos.29-33. Movants also requested that this Court treat those objections as having been timely filed, notwithstanding that this Court has not yet formally granted Movants' motion for substitution, or, in the alternative, that this Court grant Movants an extension to file these objections and deem them filed on the day that this Court grants Movants' motion for substitution. Dkt. No. 29 at 1-2; Dkt. No. 32 at 12-13. Because Defendants have not opposed these requests, this Court should grant them as conceded. *E.g., Bradshaw v. Office of Architect of Capitol*, 856 F. Supp.2d 126,143-44 (D.D.C. 2012). Moreover, whatever this Court rules on Movants' requests concerning the timeliness of their filing the objections, it is clear that this Court cannot rule on those objections until it first rules on Movants' motion for substitution and grants that motion. After all, this Court can only rule on objections to a Magistrate-Judge's report that are filed by *parties* to this action.

Furthermore, Magistrate-Judge Faruqui found that the inherently transitory exception to the mootness doctrine did not save Ms. Givens' and proposed Class B's claims regarding the failure of Defendants to render fair hearing decisions within 90 days of the requests for the fair hearings because the FAC supposedly did not did not sufficiently allege a pattern or practice of Defendants doing so and that Defendants are continuing to do so.   Dkt. No. 28 at 10-13. Even assuming that that ruling was correct — which it was not — Movants have filed a motion to amend the FAC with a Proposed Second Amended Complaint ("PSAC"), and the PSAC provides even more allegations that plausibly support that Defendants had a pattern or practice of failing to render timely decisions on Medicaid fair hearings and continue to do so. Dkt. No. 29 at 1; Dkt No. 32 at 9-12; Dkt. No. 31, Ex. A at 8-10, ¶¶ 32-39, Exs. A-D. And, as with Movants' objections to Magistrate-Judge Faruqui's Report and Recommendation, Movants need to be substituted as parties before this Court can rule on their motion to amend.

Accordingly, mootness cannot be a basis to deny Movants' motion for substitution. Rather, this Court must first rule on Movants' motion for substitution, and, only if this Court grants that motion, can this Court rule on Movants' pending objections to Magistrate Judge Faruqui's rulings on mootness, and, if necessary, on Movants' motion to file the PSAC.

      **B.**      <u>**Ms. Givens' PEME Claims in this Case are Still Live**</u>

As discussed in detail in Movants' opening papers, the FAC specifically alleges that as a direct result pf Defendant's policy or practice of not making proper PEME deductions, Ms. Givens has, since February 1, 2019, "been required to pay $2,044 of her income per month" to the nursing homes at which she was a resident. Dkt. 16 at 6, 7, 9, 10 ¶¶ 26, 30, 37, 39. The FAC goes on to allege that had Defendants made the proper PEME deductions, "Ms. Givens would not have been required to pay any of her income towards her costs of care at Stoddard Baptist, or

3

her current costs of care at Serenity Rehabilitation and Health Center" and "Ms. Givens would have used her current income each month to pay down her $40,183.93 in medical bills to Stoddard Baptist and her other medical providers." *Id.* at 6, ¶ 27.   As is apparent, the FAC clearly alleges that as a direct result of Defendant's policy or practice of failing to make appropriate PEME deductions, Ms. Givens was forced to pay monies to the nursing homes at which she was a resident that she should not have been required to pay.[1]   Accordingly, on behalf of herself and proposed Class A, Ms. Givens requested, among other things, "monetary damages in an amount to be determined at trial." *Id.* at 13, ¶ D.

Defendants contend that Movants' motion for substitution should be denied because Ms. Givens' PEME damage claims were rendered moot when the Defendants, after being sued in this

---

[1] In their response to Movants' objections to the R&R, Defendants argued (1) that "plaintiff's Medicaid claims were only ever about what the District should have paid to the nursing facilities, not about whether any money the District would have given to plaintiff[,]" Dkt. No. 36 at 1; and (2) that "the Complaint does not allege that Ms. Givens in fact made any payments to Stoddert Baptist Global Care (Stoddert) or Serenity Rehabilitation and Health Center (Serenity), nor do plaintiffs allege that any overpayment was not applied to Ms. Givens' outstanding balance." *Id.* at 4.   As is apparent from the above, Defendants' are plainly wrong about the FAC, especially when the FAC is read in the light most favorable to Movants, as this Court is required to do on this motion.   *E.g., U.S. ex rel. Health v. AT&T, Inc.*, 791 F.3d 112, 119 (D.C. Cir. 2015).   Moreover, by definition, Defendants' *overpayment* to the nursing homes is not a payment on an outstanding balance, otherwise it would not be an *overpayment*. And, Defendants have not contested that they have not reimbursed Ms. Givens for the monies their illegal PEME calculation forced Ms. Givens to pay to the nursing homes and other health care providers.

In addition, because Defendants have not yet filed an answer, Local Rule 16.3(b) prevented Ms. Givens and continues to prevent Movants from obtaining any discovery in this case. Accordingly, neither Ms. Givens nor movants have been able to verify through discovery what, if any payments, the District made to the nursing homes, and the dates and amounts of those alleged payments.   In essence, Defendants appear to be arguing "accord and satisfaction," for which they have the burden of proof, *E.g.,* Fed. R. Civ. P. 8(c)(1); *Weinstein v. District of Columbia Housing Auth.*, 931 F. Supp.2d 178, 187 (D.D.C. 2013), and which is "is an affirmative defense rather than a jurisdictional bar." *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015).   This highlights why it would be improper for this Court to rule on that defense before discovery has even begun, and why any ruling that those alleged payments mooted this case would be incorrect.

4

case, allegedly made "corrective payments" to the nursing homes for Plaintiffs' cost of care. However, Defendants do not contest that they never refunded to Ms. Givens the monies that Ms. Givens was forced to pay to the nursing homes as a direct result of the Defendants initial failure to properly calculate Ms. Givens PEME.   It is no answer to say — as did Magistrate-Judge Faruqui without citing any legal authority — that Ms. Givens cannot sue the Defendants, but may only sue the nursing homes "who may be 'double dipping,' having now collected from both Ms. Givens and the District."   Dkt. No. 28 at 7. First, it is not at all clear what, if any, cause of action Ms. Givens would have against the nursing homes, especially considering that under the Defendants' improper calculations, the nursing homes had every reason to believe that they were entitled to demand and receive the payments from Ms. Givens at the times they did so.  Indeed, if anyone has a cause of action against the nursing homes for "double dipping," it would be the Defendants. That is because the nursing homes improperly accepted and kept the Defendants' additional payments while knowing that they had already been paid by Ms. Givens.

Second, even assuming that Ms. Givens could *also* assert a claim against the nursing homes for those funds, nothing in the law requires Ms. Givens to sue the nursing homes, rather than Defendants.   It was Defendants illegal policy or custom that was a "direct causal link" to the payments that Ms. Givens was forced to make to the nursing homes.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *Singletary v. District of Columbia*, 766 F.3d 66, 72 (D.C. Cir. 2014).   Moreover, because "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit," Ms. Givens was not required to sue both the nursing homes and Defendants in this action even if Defendants and the nursing homes could be considered joint tortfeasors who are jointly and severally liable to Ms. Givens. *Temple v. Synthes*, 498 U.S. 5, 7

5

(1990); *Saddler v. Amec Foster Wheeler Environment & Infrastructure, Inc.*, 253 F. Supp. 3d 210, 217 (D.D.C. 2017).

To the extent that Defendants attempt to justify their mootness argument by contending that that the FAC does not sufficiently allege that Defendants had a policy or practice of failing to make appropriate PEME deductions, that contention is also wrong. That is because "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which p[laintiffs] could actually recover[, f]or it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946); *Sluss v. United States Department of Justice, International Prisoner Transfer Unit*, 898 F.3d 1242, 1248 (D.C. Cir. 2018) (same). Moreover, as discussed in Movants objections to the R&R, the FAC does sufficiently alleges a pattern or practice of failing to make appropriate PEME deductions. Dkt. No. 33 at 3-5. In any event, the PFAC contains additional allegations that more than sufficiently allege such a pattern or practice by Defendants. Dkt. No. 32 at 7-9.

In sum, Ms. Givens' has yet to be repaid for the monies she paid to nursing homes as a direct result of Defendants improper PEME calculation, and even Defendants concede that "'death usually does not moot a claim for monetary compensation.'" Dkt No. 34-1 at 5 (quoting *Cobell v. Jewell*, 802 F.3d 12, 23 (D.C. Cir. 2015)). Accordingly, Ms. Givens' PEME claims are still live and Movants' motion for substitution should be granted.

> **C.    Ms. Givens' and Proposed Class B's Claims Regarding the Failure of Defendants to Render Medicaid Fair Hearing Decisions Within 90 Days of the Requests for Such Hearings Can Move Forward Under the Inherently Transitory Exception ot the Mootness Doctrine**

Defendants correctly do not contest the fact that because, at the time Ms. Givens filed her complaint, Defendants had not yet rendered a decision on the fair hearing that Ms. Givens had

6

requested, Ms. Givens had standing to make a claim for injunctive and declaratory relief against Defendants for having failed to render a fair hearing decision within 90 days of her request for that hearing. *E.g., Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (holding that because "the original plaintiff at the time the complaint was filed, and each intervenor at the time of her motion to intervene, was suffering from a delay beyond the period provided by federal law for the processing of her application for food stamp or ANFC benefit[s,]" they "ha[d] standing to pursue the action or to represent the class of persons whose Food Stamp or ANFC benefits had similarly been unlawfully delayed."); *County of Riverside v. McGlaughlin*, 500 U.S. 44, 51 (1991) (because plaintiffs had not received a probable cause hearing at the time they filed their complaint, they had standing at that time to allege that the defendants were violating plaintiffs' rights under the Fourth Amendment to have probable cause decided within 48 hours after their arrests).

While in their opposition papers to the instant motion for substitution, Defendants have not addressed Movants' arguments regarding the applicability to this case of the inherently transitory exception to the mootness doctrine, Dkt. No. 32 at 11-12, Defendants did make arguments regarding that exception in their opposition to Movants' objections to the R&R. Defendants argued that the inherently transitory exception does not apply to this case because supposedly (1) the FAC does not allege that Ms. Givens was harmed by the Defendants' delay in rendering their fair hearing decision; and (2) the FAC does not allege any delay in processing her Medicaid application or in receiving her benefits.   Defendants arguments are meritless.

First, as discussed above, the FAC's allegation that Ms. Givens was "suffering from a delay beyond the period provided by federal law" due to Defendant's failure for to render a fair hearing decision within 90 days of her request for a hearing is, in and of itself, a sufficient

allegation of harm to confer standing on Ms. Givens. *Robidoux*, 987 F.2d at 938; *Riverside*, 500 U.S. at 51.   The question of whether she was going to ultimately win her fair hearing is irrelevant for standing purposes. *Riverside*, 500 U.S. at 51-52 (holding that plaintiffs who had probable cause hearings after being in custody for more than 48 hours and *lost* those hearings — and thereby could not claim to have suffered any additional harm other than the delay in the hearings itself — still had standing to proceed under the inherently transitory exception to mootness doctrine). *Cf. Kapps v. Wing*, 404 F.3d 105, 116-17 (2d Cir. 2005) (a plaintiff's right to file a complaint about procedures for determining the plaintiff's eligibility for a welfare benefit does not depend on whether the plaintiff is actually eligible for those benefits). Accordingly, Defendants' argument that the inherently transitory exception to mootness does not apply is meritless even assuming that the FAC fails to allege any harm to Ms. Givens other than the delay of the fair hearing.

 Second, as discussed in Point I(A) above, the FAC does allege that Ms. Givens suffered harm above and beyond delay of the fair hearing decision in that the FAC alleges Defendants denied Ms. Givens Medicaid benefits.   Specifically, the FAC alleged that because until Ms. Givens brought the instant lawsuit, and even afterwards Defendants denied her approximately $2,044 a month worth of Medicaid benefits, Ms. Givens was forced to pay her income to the nursing homes that she should not have been required to pay.   Dkt. 16 at 6, 7, 9, 10, 13 ¶¶ 26, 27, 30, 37, 39, D.   Even Defendants recognize that they improperly denied Ms. Givens Medicaid benefits that were due her since they claim to have paid additional monies to the nursing homes for Ms. Givens' care after Ms. Givens filed this lawsuit. Accordingly, Defendants argument that the inherently transitory exception to mootness does not apply because the FAC supposedly fails to allege any harm to Ms. Givens other than the delay of the fair hearing, is baseless.

In addition, as discussed in Point I(A) above, even assuming that Magistrate-Judge Faruqui was correct— which he was not — that the FAC does not sufficiently allege Defendants' pattern or practice of failing to render timely fair hearing decisions, and that therefore, the inherently transitory exception is inapplicable to the FAC, Movants have filed a motion to amend the FAC with the PSAC, and the PSAC provides even more allegations that plausibly support that Defendants had a pattern or practice of failing to render timely decisions on Medicaid fair hearings and continue to do so. Dkt. No. 29 at 1; Dkt No. 32 at 9-12; Dkt. No. 31, Ex. A at 8-10, ¶¶ 32-39, Exs. A-D.   Accordingly, as with Movants' objections to the R&R, Movants' need to be substituted as parties before this Court can rule on their motion to amend, and Magistrate Judge-Faruqui's mootness ruling regarding Ms. Givens' fair-hearing timeliness claims as alleged in the FAC is no basis to deny Movants' motion for substitution.

      **D.**     **Movants' Motion for Substitution was Timely Filed**

Defendants contend that because Movants filed their motion for substitution more than 90 days after Ms. Givens' attorneys filed with the Court a document denominated "Suggestion of Death" that informed the Court that Ms. Givens passed away on December 24, 2020, Dkt. No. 26, Movants' motion should be denied as untimely. Defendants are wrong.

Rule 25(a) requires that a suggestion of death "be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. . . ."   Fed. R. Civ. P. 25(a)(3). In identifying the nonparties for whom service is required, Rule 25(a) "obviously [does not require service upon] every person in the United States who happens not to be a party to the lawsuit in question. Instead, the rule requires service upon nonparties with a significant financial interest in the case, namely the decedent's successors (if his estate has been distributed) or personal representative ([if] it has not been)." *Atkins v. City of Chicago*, 547 F.3d 869, 873 (7th Cir. 2008); *Breen v.*

9

*Chao*, 322 F.R.D. 427, 430 (D.D.C. 2017). If a suggestion of death is not served on the decedent's successors or personal representatives, the 90-day clock of Rule 25(a) does not start running.  *E.g.*, *Atkins*, 547 F.3d at 873-74 (citing cases). *Breen*, 322 F.R.D. at 430

Here, none of the three successors to Ms. Given's estate — the Movants herein — was ever served with the Suggestion of Death, let alone served in accordance with Rule 4.  Reply Declaration of Aytan Y. Bellin ("Bellin Reply Decl.") at 2, ¶ 3.  The fact that two out of three of the Movants appeared in this case in a representative capacity, as attorneys-in-fact for Ms. Givens, does not change that fact, especially because neither of those Movants had appeared *personally* in this case or were individual clients of Ms. Givens' attorneys at that time.  *Id.* at 2, ¶ 2. *Cf. Johnson v. District of Columbia*, No. 2005 WL 1903551, at **6-7 (D.D.C. Jul. 20, 2005); ("'[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of *res judicata* in a subsequent action in which he appears in another.") (quoting *Restatement (Second of Judgments)* § 36(2)). In any event, Anthony D. Givens, the third co-successor to Ms. Givens estate, neither appeared in this case individually nor in a representative capacity. Bellin Reply Decl. at 2, ¶ 2. In sum, because, the successors to Ms. Givens estate were never properly served with the Suggestion of Death, the 90-day clock under Rule 25(a) never started, and Movants' motion for substitution is timely. *E.g., Atkins*, 547 F.3d at 873-74 (so holding even though the notice of death of the plaintiff was filed by the plaintiff's lawyer, who later moved to substitute plaintiff's wife for the deceased plaintiff); *Barlow v. Ground*, 39 F.3d 231, 232-35 (9th Cir. 1994).

The Suggestion of Death filed by Ms. Givens' attorneys after she died also failed to start the 90-day clock ticking because only a party or a representative or successor of a party may file a suggestion of death that starts the 90-day clock ticking under Rule 25(a), not the attorney for

10

the deceased party. *Rende v. Kay*, 415 F.2d 983, 984-985 (D.C. Cir. 1969); *Rasheed v. Hussein*, No. 04 cv 1862, 2009 WL 10736204, at *2 (D.D.C. Mar. 6, 2009); *Wilson v. Feldman*. No. 90 cv 0263, 1991 WL 197025, at * (D.D.C. Sep. 18, 1991) (notice of plaintiff's death filed by plaintiff's counsel did not start the 90-day click ticking under Rule 25(a) "because plaintiff's counsel in neither 'a party' nor 'a successor[]' nor 'a representative[] of the deceased party.'") (citing *Rende* and Rule 25(a)(1)).   Accordingly, Movants' motion for substitution is timely.

Moreover, as discussed in Movants' opening papers, it is well-settled that if a suggestion of death does not identify "what person was available to be named in substitution as a representative of the deceased," the 90-day clock never starts running.   *E.g., Rende*, 415 F.2d at 986; *District Title v. Warren*, 2017 WL 6816482, at **3-4 (D.D.C. Sep. 20, 2017). Defendants contend that *Rende*'s and its progeny's requirement that a suggestion of death name a representative of the deceased is inapplicable here because in those cases it was the *defendants'* counsel who filed suggestions of the defendants' deaths and then tried to use Rule 25(a)'s 90-day time-frame to dismiss claims made by *plaintiffs*.   Defendants maintain that these cases only "stand for the proposition that a *plaintiff* should be protected from dismissal of her claims when she is unable to move to substitute a proper *defendant* because she lacks the necessary information regarding the identity of the deceased defendant's representative or heir." Dkt. No. 34-1 at 7.   Defendants are wrong.

The D.C. Circuit specifically recognized in *Reade* that even the attorneys for a deceased party "might know that the [party] had died, yet not know where [the party's] estate would be administered." *Rende*, 415 F.2d at 986.   Only after making that observation, did the Court go on to state how in the case before it the "plaintiff's attorney did know the court of probate, but he did not know whether probate of the will might be contested, or who would be appointed

11

representative of the estate," and that the defendant's attorney's tactic in that case "would [inappropriately] place on plaintiff the burden, where no conventional representative was appointed for the estate in probate court, of instituting machinery in order to produce some representative of the estate ad litem, pending appointment of the representative contemplated by law of the domicile of the deceased." *Id.* As was recognized by the D.C. Circuit, the same can be said for an attorney for a deceased plaintiff. *See id.*

Defendants point to the statement in the Suggestion of Death — that "[a] small estate proceeding for Ms. Givens will soon be filed in the D.C. courts" and that upon the appointment of an estate representative a motion for substitution would be filed, Dkt. No. 26 — as somehow "identifying" the estate representative for the purposes of *Rende*. However, *Rende* requires that the suggestion of death individually identify the estate representative, *Rende*, 415 F.2d at 984, 986, not merely state that a court proceeding is going to be filed to identify the estate representative. Moreover, the D.C. Circuit's concern that even the attorney for a deceased party might not know who will be appointed the party's estate representative and how that might take place is borne out in this case because, contrary to Ms. Givens attorney's prediction in the Suggestion of Death, no small estate proceeding was ever filed by any of the Movants in the D.C. courts and no formal estate representative was ever appointed. And certainly, Movants, who were not even served with the Suggestion of Death, could not have known who would be the estate representative. Accordingly, Movants' motion for substitution was timely filed.

*          *          *

As the D.C. Circuit has long held, "[t]he amendment to Rule 25(a)(1) was intended to dispel unwarranted rigidity and allow more flexibility in substitution. It was intended that liberal effect be given to the 1963 amendment. The 90-day period was not intended to act as a bar to

12

otherwise meritorious actions." *Rende*, 415 F.2d at 406 (internal quotation marks and citations omitted). Accordingly, Movants' motion for substitution should be granted.

## II. DEFENDANTS' MOTION FOR A STAY OF BRIEFING AND CONSIDERATION OF MOVANTS' MOTION TO AMEND THE FAC SHOULD BE DENIED

Defendants' have not put forth any substantive arguments as to why movants motion to amend should not be granted. Rather, without authorization from this Court, Defendants' unilaterally decided that they did not have to substantively respond to Movants' substantive arguments, but rather moved to stay briefing and consideration of this motion. Defendants' motion should be denied and Movants' motion to amend should be treated as conceded.

A motion to stay a proceeding does not, in and of itself, stay anything or relieve the moving party from its obligations under federal and local rules. *See, e.g., HRC-Hainan Holding Co. v. Yijan Hu*, No. 19 mc 80277, 2020 WL 1643786, at *2 (N.D. Cal. Apr. 2., 2020) (citing cases and holding that "[t]he filing of a motion to stay discovery does not automatically relieve the movant from continuing to comply with its discovery obligations.") (internal quotation marks omitted); *Tinsley v. Kemp*, 750 F. Supp. 1001, 1013 (W.D. Mo. 1990) ("[B]y refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay — even before the court has ruled. Such a phenomenon would reduce a court's orders to useless and senseless formalities."). Here, Defendants' failure to file a brief in opposition to Movants' motion to amend is in direct contravention to Local Civil Rule7.1(b) which requires a party to file a brief in opposition to a motion within 14 days of service of that motion. Local Rule 7.1(b). The fact that Defendants filed a motion to stay does not relieve them of that obligation. *E.g., HRC-Hainan*, 2020 WL 1643786, at *2; *Tinsley*, 750 F. Supp. at 1013.

Rule 7.1 also provides that "[i]f such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." *Id.* Accordingly, because Defendants' motion for a stay "does not satisfy the requirements of Local Civil Rule 7.1(b)[,]" this Court should treat Movants' motion to amend as conceded. *Bancoult v. McNamara,* 227 F. Supp.2d 144, 150 (D.D.C. 2002) (the plaintiffs' motion for leave to conduct discovery and for enlargement of time to respond to the defendant's motion to dismiss did not satisfy the requirements of Local Rule 7.1(b) and the court therefore treated the plaintiff's motion to dismiss as conceded).

Moreover, "[e]ven if th[is] Court were to treat [Defendant's] motion for [a stay] as a memorandum in opposition to [Movants'] motion [to amend], [Defendants] still fail to present any argument countering the arguments in [Movants' motion to amend]." *Id.* This is yet another reason this Court should treat Movants' motion to amend as conceded. *Id. Accord, e.g., Bradshaw v. Office of Architect of Capitol*, 856 F. Supp.2d 126, 143-44 (D.D.C. 2012).

In any event, it is well settled that "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Here, as will be discussed below, Defendants have utterly failed to carry that burden.

Defendants contend that this Court should grant the motion to stay the briefing and decision on the Movants' motion to amend because allegedly (1) if this Court were to agree with the R&R that this case is moot, there would be no need for this Court rule on the motion to amend; (2) Movants are moving to amend as a tactic to have this Court not rule on the Movants' pending objections to the R&R; and (3) without a stay, the Defendants would suffer "undue prejudice" because Movants "chose to make five filings late in the evening of May 16, 2021[,]"and "[t]he [Defendants] should not have to juggle competing and conflicting filings of

14

such fundamental importance simultaneously." Dkt No. 34-1 at 12. These arguments are without merit.

First, Movants are not moving to amend in an effort to have this court forego ruling on their objections to the R&R. Rather, Movants filed their motion to amend because they want an opportunity to replead if this Court were to adopt the R&R. The D.C. Circuit has repeatedly held that it is insufficient for a Plaintiff to simply make a bare request to replead as alternative relief if a court were to determine to grant a defendant's motion to dismiss. Rather, the plaintiff must request the right to replead, provide the court with the proposed amended pleadings, and explain why the amended pleadings state a cause of action. *U.S. ex rel. Williams v. Martin Baker Aircraft Co.*, 389 F.3d 1251,1259 (D.C. Cir. 2004); *Confederate Memorial Ass'n v. Hines*, 995 F.2d 295, 299-300 (D.C. Cir. 1993). Accordingly, it was not only appropriate for Movants to file a motion to replead before this Court ruled on their objections to the R&R, but Movants were required to do so if they wanted an opportunity to replead.

Second, Defendants are wrong that adoption of the R&R by this Court would necessarily moot Movants' motion to amend. As discussed above in Point I(A), the R&R supported its mootness ruling on Ms. Given's claim regarding the failure of the Defendants to timely render fair hearing decisions because the FAC supposedly did not did not sufficiently allege a pattern or practice of Defendants failing to render timely decision and that Defendants are continuing to do so. But, the PSAC provides even more allegations that plausibly support that Defendants had a pattern or practice of failing to render timely decisions on Medicaid fair hearings and continue to do so.   Dkt. No. 29 at 1; Dkt No. 32 at 9-12; Dkt. No. 31, Ex. at 8-10, ¶¶ 32-39, Exs A-D. Accordingly, this Court will have to rule on the motion to amend even if it adopts the R&R.

15

Third, although Defendants complain that they should not have to respond to multiple filings simultaneously, Dkt. No. 34-1 at 12, there is nothing unusual about having to do so in litigation. Moreover, when Defendants' requested that Movants consent to a stay on Movants' motion to dismiss, Movants declined to do so, but offered to consent to more time for Defendants to respond to that motion if they needed it. Bellin Reply Decl. at 2, ¶ 4 & Ex. A. In response, Defendants said that they did not need more time. *Id.* The mere fact that Defendants would rather not respond now to Movants' motion to amend is not a proper basis to grant a stay of that motion. Of course, if the Defendants were to ask for a reasonable extension of time within which to file an opposition to Movant's motion — such as 30 days — Movants would not oppose that request even now.

Fourth, Movants oppose a stay of the briefing of the motion to dismiss because such a stay would needlessly elongate these proceedings. The briefing of the motion to amend should proceed because, as discussed above, even if this Court were to adopt the R&R, it would need to rule on the motion to amend. Moreover, the issues this Court will be considering when it rules on Movants' objections to the R&R are inextricably intertwined with the issues this Court will need to consider on Movants' motion to amend if this Court were to adopt the R&R. Delaying Defendants' briefing on these issues would actually hinder this Court from resolving the outstanding pleading issues in this case all at once in an efficient manner. And, of course, this Court is free to address the motion to amend at the time this Court deems appropriate, so there is no need for any stay of this Court's consideration of the motion. In sum, Defendants' have utterly failed to carry their burden to prove that a stay is appropriate. Accordingly, this Court should deny Defendants' request for a stay of briefing and consideration of the Motion to Amend and deem the motion to amend conceded, if Defendants do not, within the time for them to file a

reply brief on their motion for a stay, ask for, and then receive an extension from this Court for a reasonable time to submit their papers in opposition.

## **CONCLUSION**

For the reasons stated above and in Movants' opening papers. this Court should grant the Movants' motions (1) to substitute as Plaintiffs for their mother Eva Mae Givens; (2) for permission to file a Second Amended Complaint; and (3) for a ruling that Movants' objections to Magistrate-Judge Zia M. Faruqui's May 3, 2021 Report of Recommendation, that are bring filed concurrently with this motion, are timely filed, or in the alternative, should this Court decide that these objections are not timely because the Movants have not yet been formally substituted as Plaintiffs for Ms. Givens in this case, to grant Movants' an extension of time in which to file their objections to that Report and Recommendation until the date this Court grants Movants' motion for substitution, and deem those objections as timely filed as of that date. Also for the reasons stated above, this Court should deny Defendants' motion to stay briefing and consideration of Movants' motion to amend.

Dated: June 9, 2021

Respectfully submitted,

| | |
|---|---|
| LANSDMAN LAW GROUP | BELLIN & ASSOCIATES LLC |
| Ron M. Landsman, Esq. | By: /s/Aytan Y. Bellin |
| 200-A Monroe Street, Suite 110 | Aytan Y. Bellin, Esq. |
| Rockville, MD 20850 | 50 Main Street, Suite 1000 |
| Tel: (240) 403-4300 | White Plains, NY 10606 |
| Fax: (240) 403-4301 | Tel: (914) 358-5345 |
| E-mail: rml@landsmanlawgroup.com | Email: aytan.bellin@bellinlaw.com |

*Attorneys for Movants*