UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

**EVA MAE GIVENS,** by her attorneys-in-fact **DEBORAH R. BOWSER** and **EUGENE P. GIVENS, JR.**, on behalf of herself and of all others similarly situated,

                    Plaintiffs,

    -v.-

**MURIEL BOWSER,** in her official capacity as Mayor, Washington, D.C., **LAURA GREEN ZEILINGER,** in her official capacity as Commissioner, District of Columbia Department of Human Services, **WAYNE TURNAGE, MPA,** in his official as Director, District of Columbia Department of Health Care Finance, and **EUGENE A. ADAMS**, in his official capacity as Chief Judge of the District of Columbia Office of Administrative Hearings,

                    Defendants.

Civil Action No.

20 cv 307 (EGS)

---

**EUGENE P. GIVENS, JR., DEBORAH R. BOWSER AND ANTHONY D. GIVENS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR RECONSIDERATION**

 

LANDSMAN LAW GROUP
By: Ron M. Landsman, Esq.
200-A Monroe Street, Suite 110
Rockville, MD 20850
Tel: (240) 403-4300
Fax: (240) 403-4301
Email: rml@landsmanlawgroup.com

BELLIN & ASSOCIATES LLC
By: Aytan Y. Bellin, Esq.
50 Main Street, Suite 1000
White Plains, NY  10606
Tel: (914) 358-5345
Fax: (212) 571-0284
Email: aytan.bellin@bellinlaw.com

*Attorneys for Movants*

**PRELIMINARY STATEMENT**

Eugene P. Givens, Jr., Deborah R. Bowser and Anthony D. Givens (collectively "Movants") submit this reply memorandum of law in support of their motion for reconsideration of this Court's September 30, 2022 Memorandum Opinion Order (Dkt. No. 45) and this Court's September 30, 2022 Order (Dkt No. 46) order overruling Movants' objections to the Magistrate-Judge Faruqui's Report and Recommendation dismissing the First Amended Complaint. ("FAC"). For the reasons that follow, and for the discussed in Movants' opening papers, this Court should grant Movant's motion for reconsideration and amend the September 30, 2022 Memorandum Opinion and the September 30, 2022 Order to specify that the dismissal of the FAC was "without prejudice," and to direct Magistrate-Judge Faruqui to permit briefing to resume on Movants' motion for permission to file a Second Amended Complaint.

**ARGUMENT**

**I.  MOVANTS HAVE STANDING TO MAKE THIS MOTION FOR RECONSIDERATION OF THE COURT'S MEMORANDUM OPINION AND ORDER DISMISSING THE FIRST AMENDED COMPLAINT**

Defendants argue that because Movants are not parties to this action, Movant's do not have standing to make the instant motion for reconsideration of this court's memorandum opinion and order overruling Movants' objections to the Magistrate-Judge Zia M. Faruqui's Report and Recommendation (the "R&R") dismissing the FAC. Defendants' argument is without merit.

On June 16, 2021, Magistrate-Judge Faruqui issued a minute order granted Movants' motion for substitution, in part "for the limited purpose of objecting to the Report and Recommendation. Unnumbered Docket Entry Dated June 16, 2021. Magistrate-Judge Faruqui specifically "with[eld] consideration of . . . Movants' Motion to Substitute Party for all other

1

purposes, until [the objection to the] Report & Recommendation is resolved." *Id.*

Magistrate-Judge u substitution of Movants for the purpose of objecting to the R&R plainly encompasses Movants moving for reconsideration of this Court's ruling on that very objection, and Defendants have utterly failed to provide a reasoned argument otherwise. Moreover, because of that substitution, Defendants' argument concerning Movants' failure to file a motion to intervene is irrelevant. Finally, because Defendants never objected to Magistrate-Judge Faruqui's non-dispositive substitution order, any objection they might have had to that order is waived. *See, e.g.,* Fed. R. Civ. P. 72(a) (discussing non-dispositive orders by a Magistrate-Judge and stating that "[a] party may not assign as error a defect in the order not timely objected to."); Wright& Miller, Fed. Prac. & Proc. § 3069. *See also Kalyman v. Judicial Watch, Inc.*, 6 F.4th 1301, 1312 (D.C. Cir. 2021) ("[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."). In any event, Defendants have not objected are not objecting to that order.

Accordingly, Movants plainly have standing to make this motion for reconsideration.

## II.    MOVANTS MOTION FOR RECONSIDERATION SHOULD BE GRANTED

The D.C. Circuit has ruled that a party can amend a complaint after it is dismissed by filing a Rule 59(e) motion to alter or amend a judgment combined with a rule 15(a) motion requesting leave of court to amend their complaint. *See, e.g., Brink v. Continental ins. Co.*, 787 F.3d 1120, 1128 (D.C. Cir. 2015); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). "[T]he denial of the Rule 59(e) motion in that situation is an abuse of discretion if the dismissal of the complaint with prejudice was erroneous; that is, the Rule 59(e) motion should be granted unless the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Brink*, 787 F.3d at 1128 (internal quotation marks omitted); *Firestone*, 76

F.3d at 1209.

Here the Movant's have filed a Rule 59(e) motion and there is a Rule 15(a) motion pending before Magistrate-Judge Faruqui.   In their opening papers on the instant Rule 15(e) motion, Movants specifically requested that this Court, among other things, order further briefing on the already extant motion to file a Second Amended complaint that Magistrate Judge Faruqui had put on hold pending this Court's ruling on Movant's objections to the R&R.   Dkt. No. 48 at 3; Dkt. No. 48-1 at 3-5.   In addition, Movants made specific arguments as to why the motion for permission to file a Second Amended Complaint was meritorious. Dkt. No. 48-1 at 4-5.

The fact that Magistrate-Judge Faruqui had "with[eld] consideration of . . . Movants' Motion to Substitute Party for all other purposes, [including for the motion to filed a second amended complaint] until [the objections to the] Report & Recommendation [were] resolved," does not change the result here.   That is because, as discussed above, Movants plainly have standing to make this motion for reconsideration, and Movants did everything possible, even before this Court ruled on their objections to the R&R, to be substituted for the purposes of filing the motion for permission to file the Second Amended Complaint.   In fact, Movants moved for permission to file a Second Amended Complaint in the very same motion in which they asked for permission to be substituted for all purposes, including for the filing objections to the R&R.   Dkt. Nos. 29-32.   Moreover, for the reasons discussed in Point ___, below, Movants' motion for substitution for all other purposes is almost certain to be granted.   [* PUT IN MISLEADING THAT DID MOVANTS DID NOT RESPND TO MOTION TO DISMISS PURSUANT TO RULE 25(A) *].

This Court should grant Movants' motion for reconsideration for a number of reasons. First, despite the pendency of the motion to file a Second Amended Complaint, and despite

3

Movants' specific requested in their objections to the R&R that this Court grant them leave to file a Proposed Second Amended Complaint ("PSAC"), "as requested in Ms. Givens 'opposition to Defendants' motion to dismiss, and in [Movants'] motion to file a Second Amended Complaint. Dkt. No. 20 at 24; Dkt. No. 29 at 1; Dkt. No. 32 at 5-12." Dkt. No. 33 at 7, this Court failed to provide any reasons for refusing to grant the motion to amend or to order briefing to continue on that motion before Magistrate-Judge Faruqui.  As the D.C. Circuit has ruled, that is error.  *Brinks*, 787 F.3d at 1129 (it is error for a district court to fail to provide reasons for refusing to grant leave to amend); *Firestone*, 76 F.3d at 1209 (same).  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.").

Second, as discussed in Movants' opening papers, the PSAC more than plausibly alleges a cause of action for Defendants' violations of the time frames for rendering Medicaid fair hearing decisions.  Dkt No. 48-1 at 2-4.  The PSAC specifically alleges states, based on OAH reports, that (1) "[t]he total number of cases filed with OAH in 2018 was 30,186, in 2019 was 23,249, [and] in 2020 was 15,486," PSAC ¶ 37; and (2) that the percentage of non-unemployment hearings not decided within 120 days (let alone 90 days) in 2018 was 16.2%, in 2019 was 56.9%, and in 2020 was 66.1%.  PSAC ¶¶ 34, 35, 36.  In addition, an OAH report that had not yet been promulgated when the motion to amend the complaint was filed indicates that in 2021, the total number of cases filed with OAH was 14,380 and the percentage of non-unemployment hearings decided within 120 days was 74.02%.[1]  Based on the statistics prior to

---

[1] Office of Administrative Hearings FY2021 at 1, located at
https://oca.dc.gov/sites/default/files/dc/sites/oca/publication/attachments/OAH_FY21PAR.pdf

the 2021 OAH report, the PSAC stated that "there are *currently* hundreds, if not thousands of cases where individuals have requested Medicaid fair hearings and those fair hearings have not been decided within 90 days of the dates of those requests," PSAC ¶ 39 (emphasis added), and that Mayor Bowser and Chief judge Adams "have a policy or practice of have a policy and/or practice of failing to render Medicaid fair hearing decisions within 90 days of the requests for such hearings, and, over the last four years, the Fair [they] have done so to thousands of persons and continue to do so." PSAC ¶ 32 (emphasis added).

Defendants argue that the above is not sufficient to plausibly allege Defendants' policy or practice of failing to render Medicaid fair hearing decisions within 90 days and their continuation of doing do because "the statistics cited are not specific to decisions rendered in Medicaid cases but rather include decisions rendered in all cases filed at OAH with the exception of non-unemployment insurance cases." Def. Br. at 12.   Defendants therefore maintain that "Movants' conclusions based on these reports about the number of Medicaid fair hearings that were not timely decided amount to mere speculation."  *Id.* Defendants are wrong.

It is well-settled that "[d]etermining a claims plausibility is a 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Humane Society of the U.S. v. Vilsak*, 797 F.3d 4, 8 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Accordingly, this Court may draw reasonable inferences from facts presented in the PSAC — which facts the Court must assume are true — as to the percentage of Medicaid fair hearings were not decided within 120 days, let alone 90 days.

"[T]here [i]s no reason to suppose that [the percentage of Medicaid Fair hearings that took more than 120 days to decide] differ markedly from [the percentage of other non-unemployment insurance hearings that took OAH more than 120 days to decide.]  *Dothard v.*

5

*Rawlinson*, 433 U.S. 321, 330 (1977).  Accordingly, it is completely appropriate for the purposes of determining the *plausibility* of the PSAC to apply those percentages to Medicaid fair hearings, which are among the non-unemployment insurance cases decided by OAH.  *See id.* As discussed above, the percentage of non-unemployment insurance hearings that have taken more than 120 days to decide — which percentage is plausible to apply to Medicaid fair hearings decided during that same time period — have increased from 16.2% in 2018, to 56.9% in 2019, to 66.1% in 2020, to 74.02% in 2021.  As is apparent, the defendants "knowingly ignore[d] a practice that was consistent enough to constitute custom[,]" *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004), and was "widespread." *Connick v. Thompson*,563 U.S. 51, 61 (2011). The Defendants were clearly aware of consistent pattern and practice from their own reports, and therefore, the PSAC easily plausibly alleges, based on the Defendant's own statistics, that the Defendants had a pattern and practice of failing to decide Medicaid fair hearings within 120 days, let alone the 90 days required by federal law.

    Contrary to Defendants' apparent position, there is no requirement on this motion for reconsideration of the dismissal of a complaint that the Movants' provide evidence of the number of persons affected by the Defendants pattern and practice.  Indeed, in purported class actions like this one — where plaintiffs ultimately have the burden of proof on numerosity — it is rarely appropriate to dismiss/strike class allegations until there has been discovery. *E.g., In re: McCormick & Co.*, 217 F. Supp.3d 124, 140 (D.D.C. 2016); *Smith v. Washington Post Co.*, 962 F. Supp.2d 79, 90-91 (D.D.C. 2013).  In this case, no discovery has taken place because the local rules prohibit discovery from being taken while a motion to dismiss is pending. Accordingly, Defendants' contention that this motion for reconsideration and the motion for permission to file the PSAC must be denied because the PSAC does not allege the exact number

of persons affected by Defendants' policy or practice of failing to timely render Medicaid Fair Hearing decisions in a timely fashion, is meritless.

Because Movants have made a motion for reconsideration while the motion for permission to file the PSAC is pending, and because the PSAC contains allegations to cure the alleged deficiencies of the dismissed complain, Movants' motion for reconsideration should be granted.

### III. BY FAILING TO OBJECT TO MAGISTRATE-JUDGE FARUQUI'S REJECTION OF THEIR TIMELINESS ARGUMENTS ON MOVANTS' MOTION FOR SUBSTITUTION, DEFENDANTS' HAVE WAIVED THOSE OBJECTIONS.   IN ANY EVENT, THOSE OBJECTIONS ARE MERITLESS

Defendants' contend that even if the motion for reconsideration is granted, this Court should deny the remaining portion of the pending motion for substitution before Magistrate-Judge Faruqui and dismiss this case.   Specifically, Defendant contend that the remaining portion of that motion should be denied because Movant's motion for substitution should be denied because it was not timely made. Defendants contention is without merit.

First, Defendants made these very same timeliness arguments before Magistrate-Judge Faruqi in their opposition to the Movants motion for substitution.   Dkt. No. 34-1 at 6-8. Magistrate-Judge Faruqui obviously rejected those arguments when he granted that portion of Movants motion for substitution for the purposes of objecting to the R&R. Unnumbered Docket Entry Dated June 16, 2021.   Because Defendants never objected to Magistrate-Judge Faruqui's non-dispositive substitution order, any objection they might have had to that order is waived. *See, e.g.,* Fed. R. Civ. P. 72(a); Wright& Miller, Fed. Prac. & Proc. § 3069. *See Kalyman* , 6 F.4th 1301, 1312 (D.C. Cir. 2021) ("[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

7

Defendants timeliness argument also fails as a substantive matter. Rule 25(a) requires that a suggestion of death "be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. . . ." Fed. R. Civ. P. 25(a)(3). In identifying the nonparties for whom service is required, Rule 25(a) "obviously [does not require service upon] every person in the United States who happens not to be a party to the lawsuit in question. Instead, the rule requires service upon nonparties with a significant financial interest in the case, namely the decedent's successors (if his estate has been distributed) or personal representative ([if] it has not been)." *Atkins v. City of Chicago*, 547 F.3d 869, 873 (7th Cir. 2008); *Breen v. Chao*, 322 F.R.D. 427, 430 (D.D.C. 2017). If a suggestion of death is not served on the decedent's successors or personal representatives, the 90-day clock of Rule 25(a) does not start running. *E.g., Atkins*, 547 F.3d at 873-74 (citing cases). Breen, 322 F.R.D. at 430.

Here, none of the three successors to Ms. Given's estate — the Movants herein — was ever served with the Suggestion of Death, let alone served in accordance with Rule 4. Reply Declaration of Aytan Y. Bellin ("Bellin Reply Decl.") at 2, ¶ 3. The fact that two out of three of the Movants appeared in this case in a representative capacity, as attorneys-in-fact for Ms. Givens, does not change that fact, especially because neither of those Movants had appeared personally in this case or were individual clients of Ms. Givens' attorneys at that time. Id. at 2, ¶ 2. *Cf. Johnson v. District of Columbia*, No. 2005 WL 1903551, at **6-7 (D.D.C. Jul. 20, 2005); ("'[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another.") (quoting Restatement (Second of Judgments § 36(2)). In any event, Anthony D. Givens, the third co-successor to Ms. Givens estate, neither appeared in this case individually nor in a representative capacity. Dkt. No. 39 at 2, ¶ 2. In sum, because, the

successors to Ms. Givens estate were never properly served with the Suggestion of Death, the 90-day clock under Rule 25(a) never started, and Movants' motion for substitution is timely. *E.g., Atkins*, 547 F.3d at 873-74 (so holding even though the notice of death of the plaintiff was filed by the plaintiff's lawyer, who later moved to substitute plaintiff's wife for the deceased plaintiff); *Barlow v. Ground*, 39 F.3d 231, 232-35 (9th Cir. 1994).

The Suggestion of Death filed by Ms. Givens' attorneys after she died also failed to start the 90-day clock ticking because only a party or a representative or successor of a party may file a suggestion of death that starts the 90-day clock ticking under Rule 25(a), not the attorney for the deceased party. *Rende v. Kay*, 415 F.2d 983, 984-985 (D.C. Cir. 1969); *Rasheed v. Hussein*, No. 04 cv 1862, 2009 WL 10736204, at *2 (D.D.C. Mar. 6, 2009); *Wilson v. Feldman*. No. 90 cv 0263, 1991 WL 197025, at * (D.D.C. Sep. 18, 1991) (notice of plaintiff's death filed by plaintiff's counsel did not start the 90-day click ticking under Rule 25(a) "because plaintiff's counsel in neither 'a party' nor 'a successor[]' nor 'a representative[] of the deceased party.'") (citing Rende and Rule 25(a)(1)). Accordingly, Movants' motion for substitution is timely.

Moreover, as discussed in Movants' opening papers, it is well-settled that if a suggestion of death does not identify "what person was available to be named in substitution as a representative of the deceased," the 90-day clock never starts running. E.g., *Rende*, 415 F.2d at 986; *District Title v. Warren*, 2017 WL 6816482, at **3-4 (D.D.C. Sep. 20, 2017). Defendants have previously contended that Rende's and its progeny's requirement that a suggestion of death name a representative of the deceased is inapplicable here because in those cases it was the defendants' counsel who filed suggestions of the defendants' deaths and then tried to use Rule 25(a)'s 90-day time-frame to dismiss claims made by plaintiffs. Defendants maintained that these cases only "stand for the proposition that a plaintiff should be protected from dismissal of

9

her claims when she is unable to move to substitute a proper defendant because she lacks the necessary information regarding the identity of the deceased defendant's representative or heir." Dkt. No. 34-1 at 7. Defendants are wrong.

The D.C. Circuit specifically recognized in *Reade* that even the attorneys for a deceased party "might know that the [party] had died, yet not know where [the party's] estate would be administered." *Rende*, 415 F.2d at 986. Only after making that observation, did the Court go on to state how in the case before it the "plaintiff's attorney did know the court of probate, but he did not know whether probate of the will might be contested, or who would be appointed representative of the estate," and that the defendant's attorney's tactic in that case "would [inappropriately] place on plaintiff the burden, where no conventional representative was appointed for the estate in probate court, of instituting machinery in order to produce some representative of the estate ad litem, pending appointment of the representative contemplated by law of the domicile of the deceased." *Id.* As was recognized by the D.C. Circuit, the same can be said for an attorney for a deceased plaintiff. See id.

Defendants previously pointed to the statement in the Suggestion of Death — that "[a] small estate proceeding for Ms. Givens will soon be filed in the D.C. courts" and that upon the appointment of an estate representative a motion for substitution would be filed, Dkt. No. 26 — as somehow "identifying" the estate representative for the purposes of *Rende*. However, *Rende* requires that the suggestion of death individually identify the estate representative, Rende, 415 F.2d at 984, 986, not merely state that a court proceeding is going to be filed to identify the estate representative. Moreover, the D.C. Circuit's concern that even the attorney for a deceased party might not know who will be appointed the party's estate representative and how that might take place is borne out in this case because, contrary to Ms. Givens attorney's prediction in the

10

Suggestion of Death, no small estate proceeding was ever filed by any of the Movants in the D.C. courts and no formal estate representative was ever appointed. And certainly, Movants, who were not even served with the Suggestion of Death, could not have known who would be the estate representative. Accordingly, Movants' motion for substitution was timely filed.

The D.C. Circuit has long held, "[t]he amendment to Rule 25(a)(1) was intended to dispel unwarranted rigidity and allow more flexibility in substitution. It was intended that liberal effect be given to the 1963 amendment. The 90-day period was not intended to act as a bar to otherwise meritorious actions." *Rende*, 415 F.2d at 406 (internal quotation marks and citations omitted). Moreover, "it is difficult to imagine a case where a case where discretion might properly be exercised to deny a motion to substitute for a deceased plaintiff made within the rule's time limits."  *Saylor v. Bastedo*, 623 F.2d 230, 237 (2d Cir. 1980); Wright & Miller, Fed. Prac. & Proc. § 1955 (noting that in the context of motions to substitute due to the death of a party, "[t]here appears to be only one reported case under the amended rule in which substitution has been denied when the motion has been made within the 90-day period.").

Accordingly, Movants' motion for substitution should be granted.

**IV     THE PSAC SATIFIES THE INHERENTLY TRANSIOTORY EXCEPTION TO THE MOOTNES RULE**

In its ruling upholding the R&R, this Court held that the First Amended Complaint did not satisfy the inherently transitory exception to the mootness rule because it had not sufficiently alleged a continuing violation of the Medicaid Fair Hearing timelines requirements as to class members.   The PSAC, cures that problem because it specifically alleges that that violation is continuing, and the District Reports it cites that show that violation continuing to grow from 2019 to 2020.   Moreover, the subsequent District Report cited above as to the 2021 statistics show that those numbers are still continuing to grow.   Accordingly, the PSAC's allegations are

11

more than sufficient to plausibly satisfy the requirements of the inherently transitory exception ot the mootness rule, and the fact that the Plaintiff's individual claims as to lack of timelines of her fair hearing decision is irrelevant.

## CONCLUSION

This Court should grant Movants' motion for reconsideration and amend the September 30, 2022 Memorandum Opinion and the September 30, 2022 Order to specify that the dismissal of the FAC was "without prejudice," and to direct Magistrate-Judge Faruqui to permit briefing to resume on Movants' motion for permission to file a Second Amended Complaint.

Dated: November 25, 2022

Respectfully submitted,

BELLIN & ASSOCIATES LLC

By: /s/Aytan Y. Bellin
Aytan Y. Bellin, Esq.
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 358-5345
Email: aytan.bellin@bellinlaw.com

*Attorneys for Plaintiff*